1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    KENNETH R BURNETT,                     CASE NO. C22-0361JLR

11                         Petitioner,       ORDER

             v.
12
      UNITED STATES OF AMERICA,
13
                           Respondent.
14

15                        **I.    INTRODUCTION**

16          Before the court is Petitioner Kenneth R. Burnett's motion to vacate judgment

17    pursuant to 28 U.S.C. § 2255.  (Mot. (Dkt. # 1); Reply (Dkt. # 11).)  Respondent the

18    United States of America (the "Government") opposes the motion.  (Resp. (Dkt. # 10).)

19    The court has considered the parties' submissions, the balance of the record, and the

20    applicable law.  Being fully advised, the court DENIES Mr. Burnett's motion.

21    //

22    //

1

## II.   BACKGROUND

2          Mr. Burnett is a 50-year-old inmate who is currently detained at Federal

3    Correctional Institution-Phoenix ("FCI-Phoenix").  (*See* Resp. at 4; Presentence

4    Investigation Report ("PSR") (CR[1] Dkt. # 28 (sealed)) at 2.)  On January 3, 2017, two

5    individuals working undercover with the Bureau of Alcohol, Tobacco, Firearms and

6    Explosives ("ATF")—a confidential informant ("CI") and an ATF agent—met Mr.

7    Burnett at his residence to acquire a firearm.  (PSR at 3-4.)  Mr. Burnett showed them a

8    loaded 12-gauge shotgun, a Norinco SKS rifle, and a Star Firestar 9-millimeter pistol.

9    (*Id.* at 4.)  At the same time, the CI discussed purchasing a half-ounce of heroin from Mr.

10   Burnett.  (*Id.*)  After Mr. Burnett agreed to sell the CI a half-ounce of heroin, the CI paid

11   Mr. Burnett and then returned later that day—again with the undercover agent—to pick

12   up the heroin.  (*Id.*)  Approximately a week later, the ATF executed a search warrant on

13   Mr. Burnett's property and arrested Mr. Burnett.  (*Id.*)  During his arrest, ATF agents

14   seized 15.6 grams of methamphetamine, 0.8 grams of heroin, a Norinco SKS rifle, a Star

15   Firestar 9-millimeter pistol, 200 bullets, and two digital scales.  (*Id.*)  Mr. Burnett was

16   indicted on one count of possession of methamphetamine with intent to distribute in

17   violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); one count of possession of a firearm in

18   furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and one count

19

20

21          [1] The court uses "Dkt." to refer to docket entries in this case and "CR Dkt." to refer to
22   docket entries in Mr. Burnett's criminal case, *United States v. Burnett*, CR17-0029JLR (W.D.
     Wash.).

1   of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (*See generally*

2   Indictment (CR Dkt. # 11).)

3         On April 20, 2017, the parties entered into a plea agreement.  (*See generally* (Plea

4   Agreement (CR Dkt. # 24).)  As part of the plea agreement, the Government agreed not

5   to prosecute the possession of a firearm in furtherance of a drug trafficking crime charge.

6   (*See generally* Superseding Information (CR Dkt. # 20); Resp. at 4; Plea Agreement.)

7   Accordingly, Mr. Burnett pleaded guilty to one count of possession of methamphetamine

8   with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and one

9   count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (*See* Plea

10  Agreement ¶ 2.)  Pursuant to the terms of the plea agreement, the Government agreed to

11  recommend no more than 15 years of incarceration, and Mr. Burnett agreed to

12  recommend no less than 10.  (*See id.* ¶ 14.)

13        The U.S. Probation Office found Mr. Burnett's total offense level to be 25 based

14  on several factors, including:  a base offense level of 24; a two-level upward deviation for

15  the possession of three firearms; a two-level upward deviation for maintaining premises

16  for the purpose of manufacturing or distributing a controlled substance; and a three-level

17  downward deviation for acceptance of responsibility.  (*See* PSR at 6.)  It further found

18  Mr. Burnett's criminal history category to be III based on his:  (1) 2002 conviction for

19  carrying and possessing a firearm in furtherance of a drug trafficking crime; and (2) 2013

20  conviction for possession of heroin.  (*See id.* at 7-10.)  Thus, it calculated Mr. Burnett's

21  sentencing guidelines range as 70-87 months.  (*See id.* at 13.)

22  //

1    In its presentence report, the U.S. Probation Office also acknowledged the

2  significant benefits that Mr. Burnett received through the Government's "exercise of

3  charging discretion" in the plea agreement.  (*Id.* at 14.)  It noted that had Mr. Burnett

4  been convicted of the § 924(c) count (possession of firearm in furtherance of drug

5  trafficking) that the Government agreed to dismiss, "it would be his second [§ 924(c)]

6  conviction and, thus, the mandatory minimum prison sentence would have been 25 years,

7  which would have been required to run consecutively to the drug offense charged in

8  [Count 1] (a five-year mandatory minimum sentence offense)."  (*Id.*)  Thus, "Mr. Burnett,

9  by virtue of the plea agreement, . . . avoided a 30-year mandatory minimum sentence (or

10  more had an additional § 924(c) count been charged as it could have been)."  (*Id.*)

11    On September 5, 2017, the court sentenced Mr. Burnett to 10 years of

12  imprisonment and five years of supervised release.[2]  (Judgment (CR Dkt. # 40); 9/5/17

13  Min. Entry (CR Dkt. # 39).)  Mr. Burnett did not appeal.  (*See generally* CR Dkt.)  He

14  was remanded into custody following his sentencing hearing, and his projected release

15  date is October 22, 2025.  (*See* Judgment at 2; Comp. Release Memo. (CR Dkt. # 54

16  (sealed)) at 1; Resp. at 4.)

17    On June 18, 2020, Mr. Burnett filed his first motion pursuant to 28 U.S.C. § 2255,

18  seeking to vacate his conviction for felon in possession of a firearm based on *Rehaif v.*

19

20    [2] Consistent with the plea agreement, the Government recommended a sentence of 15
     years and Mr. Burnett recommended a sentence of 10 years at the sentencing hearing.  (*See*
21  *generally* Plea Agreement; Sentencing Tr. (CR Dkt. # 45).)  Additionally, the court adopted the
     U.S. Probation Office's sentencing guidelines calculation, finding that Mr. Burnett's total
     offense level was 25 and that he was in criminal history category III, resulting in guidelines
22  range of 70-87 months.  (Sentencing Tr. at 26:18-20.)

*United States*, __ U.S. __, 139 S. Ct. 2191 (2019).  *See* 2255 Mot., *Burnett v. United States*, No. C20-0947JLR, Dkt. 1.  After the Supreme Court's decision in *Greer v. United States*, __ U.S. __, 141 S. Ct. 2090 (2021), the court granted the parties' joint motion to dismiss Mr. Burnett's first § 2255 motion.  6/30/21 Order, *Burnett*, No. C20-0947JLR, Dkt. 14.

Mr. Burnett filed the instant 28 U.S.C. § 2255 motion on March 25, 2022.[3]  (*See generally* Mot.)  He argues that he is entitled to relief because his federal sentencing guidelines calculation was based on a state conviction that has since been vacated on constitutional grounds.  (*See id.* at 1 (claiming that he is entitled to relief "on constitutional error grounds and/or because the sentence 'is otherwise subject to collateral attack' under § 2255(a)").)  The vacatur and dismissal of his 2013 conviction for possession of heroin "eliminates two of his five criminal history points, reducing his criminal history category from III to II and his advisory guidelines range from 70 to 87 months to 63 to 78 months."  (*Id.*)  Mr. Burnett thus asks the court to vacate his sentence, "schedule a resentencing hearing," and "resentence him using the correct advisory guideline[s] range."  (*Id.* at 6.)

The Government argues that court cannot reach the merits of Mr. Burnett's motion because his habeas claim is procedurally defaulted.  (Resp. at 5-6.)  If the court finds that Mr. Burnett can overcome his default, the Government "concedes that, on these facts, [Mr.] Burnett can attack the judgment of this [c]ourt."  (*Id.* at 7.)  However, the

---

[3] Mr. Burnett simultaneously filed a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (*See* RIS Mot. (CR Dkt. # 46).)

1  Government argues that "rather than affording [Mr.] Burnett a plenary resentencing, the

2  [c]ourt should correct [Mr.] Burnett's sentence by revising his criminal history category

3  and Guidelines range, updating the Statement of Reasons, . . . reimposing the 10-year

4  sentences," and directing "U.S. Probation to amend the [presentence report] to reflect"

5  Mr. Burnett's vacated state conviction.  (*Id.* at 11.)

### III.   ANALYSIS

7       The court begins by addressing the legal standard for motions under 28 U.S.C.

8  § 2255.  It then discusses whether Mr. Burnett has met § 2255's statutory prerequisites

9  before turning to the issue of whether Mr. Burnett's claim is procedurally defaulted and

10  whether he is entitled to a certificate of appealability.

**A.     Legal Standard for Motions Under 28 U.S.C. § 2255**

12      A petitioner seeking relief under 28 U.S.C. § 2255 must prove the existence of an

13  error rendering his conviction unlawful.  *See Simmons v. Blodgett*, 110 F.3d 39, 42 (9th

14  Cir. 1997); *see also Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938); *Bell v. United

15  States*, No. C19-2018JCC, 2020 WL 3542503, at *2 (W.D. Wash. June 30, 2020).  A

16  prisoner in custody for a federal law violation may move to vacate, set aside, or correct

17  the sentence under four circumstances:  where (1) "the sentence was imposed in violation

18  of the Constitution or laws of the United States"; (2) "the court was without jurisdiction

19  to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by

20  law"; or (4) the sentence is otherwise "subject to collateral attack."  28 U.S.C. § 2255(a).

21      Pursuant to § 2255(f), a petition for habeas relief must be brought within one year

22  of:  (1) "the date on which the judgment of conviction became final"; (2) "the date on

1  which the impediment to making a motion created by governmental action in violation of

2  the Constitution or laws of the United States is removed, if the movant was prevented

3  from making a motion by such governmental action"; (3) "the date on which the right

4  asserted was initially recognized by the Supreme Court, if that right has been newly

5  recognized by the Supreme Court and made retroactively applicable to cases on collateral

6  review"; or (4) "the date on which the facts supporting the claim or claims presented

7  could have been discovered through the exercise of due diligence." *See id.*

8  § 2255(f)(1)-(4).

9  **B.   Timeliness and Other Statutory Prerequisites**

10      As a threshold matter, Mr. Burnett has met the statutory prerequisites.  Because

11  Mr. Burnett is currently incarcerated, he meets § 2255's "custody" requirement.  *See*

12  *Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002).  In addition, Mr. Burnett

13  timely filed the instant motion under § 2255(f)(4).[4]  Mr. Burnett's motion is predicated

14  on the Snohomish County Superior Court's September 16, 2021 vacatur of one of his

15  prior convictions.  (Mot. at 1; *id.*, Ex. 1 ("Vacatur Order").)  Mr. Burnett diligently

16  sought vacatur of that conviction once the basis to do so became available, and he filed

17  the instant motion on March 25, 2022—well within the one-year deadline.  (*See generally*

18  Mot.); *Johnson v. United States*, 544 U.S. 295 (2005) (holding one-year period begins

19

20

21

22  ────────────────

[4] The Government concedes that the instant motion was timely filed.  (*See* Resp. at 6.)

1   running when petitioner receives notice of order vacating prior conviction, if vacatur was

2   pursued with due diligence); 28 U.S.C. § 2255(f)(4).[5]

3   **C.   Procedural Default**

4           "The general rule in federal habeas cases is that a defendant who fails to raise a

5   claim on direct appeal is barred from raising the claim on collateral review." *Sanchez*

6   *Llamas v. Oregon*, 548 U.S. 331, 350 51 (2006); *Bousley v. United States*, 523 U.S. 614,

7   622 (1998).  If a "defendant fails to raise an issue before the trial court, or presents the

8   claim and then abandons it, and fails to include it on direct appeal" the issue is

9   procedurally defaulted and may not be raised in a 28 U.S.C. § 2255 motion "except under

10  unusual circumstances." *Thorson v. United States*, No. C18-0136RSM, 2019 WL

11  3767132, *6 (W.D. Wash. Aug. 9, 2019) (citing *Bousley*, 523 U.S. at 622).  In the instant

12  motion, Mr. Burnett contends that his sentence must be vacated because a state

13  conviction that affected this court's sentencing guidelines range calculation has been

14  vacated.  (*See* Mot. at 1, 4-5.)  However, Mr. Burnett's claim is procedurally defaulted

15  because he never raised this claim at sentencing or on direct appeal.[6]  (*See generally*

16  Sentencing Tr.; CR Dkt.)

17  _____

18      [5] While a petitioner is not permitted to bring a second or successive motion under § 2255
    absent certification by the "appropriate court of appeals," *see* 28 U.S.C. § 2255(h), the court
    agrees that the instant motion is effectively Mr. Burnett's first § 2255 motion because his earlier

19  motion was jointly dismissed prior to any adjudication on the merits.  *See Slack v. McDaniel*,
    529 U.S. 473, 486-87 (2000) (stating that a motion is "second or successive" if an earlier motion

20  was adjudicated on the merits); 6/30/21 Order, *Burnett*, No. C20-0947JLR, Dkt. 14 (granting the
    parties' joint motion to dismiss Mr. Burnett's § 2255 motion); (*see also* Resp. at 6; Reply at 1).

21      [6] The parties do not dispute that Mr. Burnett's claim is procedurally defaulted for this
    reason.  (*See generally* Resp. at 5-6; Reply at 2-3.)  Rather, they dispute whether Mr. Burnett can

22  overcome his default.  (*See generally* Resp. at 5-6; Reply at 2-3.)

1    A defendant can overcome procedural default and have the court consider the

2    merits of his § 2255 claim by demonstrating "both (1) 'cause' excusing his double

3    procedural default and (2) 'actual prejudice' resulting from the errors of which he

4    complains." *United States v. Frady*, 456 U.S. 152, 167 (1982).[7]  A petitioner may

5    demonstrate "cause" by showing "that the procedural default is due to an 'objective

6    factor' that is 'external' to [him] and that 'cannot be fairly attributed to him.'" *Manning*

7    *v. Foster*, 224 F.3d 1129, 1133 (9th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S.

8    722, 753 (1991)).  The petitioner can make this showing when "the factual or legal basis

9    for [the] claim was not reasonably available to counsel" at the time of sentencing or

10   direct appeal.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *United States v. Braswell*,

11   501 F.3d 1147, 1150 (9th Cir. 2007).

12       To establish actual prejudice, the petitioner must show that the error worked to his

13   "actual and substantial disadvantage."  *Frady*, 456 U.S. at 170 (demonstrating that the

14   alleged error "created a *possibility* of prejudice" is insufficient).  "To demonstrate

15   'prejudice' as to a Guidelines error, the petitioner 'must at least show that the error

16   affected the outcome of his sentencing proceeding.'  Put another way, '[p]rejudice is

17   shown when "there is a reasonable probability" that the result of a petitioner's sentencing

18   would have been different without the error to which the petitioner failed to object.'"

19   *Carpio v. United States*, 218 F. Supp.2d 1182, 1195 (W.D. Wash. 2016) (citations

20

21       [7] Alternatively, a petitioner can show "actual innocence" to overcome procedural default.

22   *Bousley*, 523 U.S. at 622-23.  Mr. Burnett has not raised that argument here.  (*See generally* Mot.; Reply.)

1   omitted) (first quoting *United States v. Dean*, 169 F. Supp. 3d 1097, 1109 (D. Or. 2016);

2   and then quoting *Gilbert v. United States*, No. C15-1855JCC, 2016 WL 3443898, at *3

3   (W.D. Wash. June 23, 2016)); *Correll v. Stewart*, 137 F.3d 1404, 1416 (9th Cir. 1998)

4   (holding that the petitioner did not establish actual prejudice where he could not "make

5   the requisite showing that his sentence would have been different" absent the alleged

6   error); *see also Murray*, 477 U.S. at 493-94 (stating that the level of prejudice required to

7   overcome procedural default is "significantly greater than that necessary under the more

8   vague inquiry suggested by the words 'plain error'").

9           The Government contends that Mr. Burnett cannot overcome procedural default as

10   to this claim.  (Resp. at 5-6.)  First, the Government concedes that because "the factual

11   basis [for this claim] was unavailable at the time of [sentencing or] direct appeal," Mr.

12   Burnett has established "cause" to excuse his default.  (*Id.*)  However, "because the plea

13   agreement requires [Mr.] Burnett to recommend a 10-year sentence regardless of the

14   [advisory guidelines] range," the Government argues that Mr. Burnett "cannot show that

15   he was sufficiently prejudiced by this error to overcome his procedural default."  (*Id.*)

16   Mr. Burnett argues that the Government "suggests a thought-process to this [c]ourt that is

17   not known, and cannot be known by the parties, namely what sentence this [c]ourt would

18   impose if the parties made the same recommendation but the Guidelines were even lower

19   than they had been before.  (Reply at 2; *id.* at 3 (noting that the court used the advisory

20   guidelines range as a "starting point" and "remain[ed] cognizant of them throughout the

21   sentencing process" (quoting Sentencing Tr. at 27:1-3)).)  The "question of prejudice," he

22   contends, "has nothing to do with breach of the plea agreement, only whether there is a

1    reasonable probability that this [c]ourt would change the sentence, which is an objective

2    question that only the [c]ourt can answer." (*Id.* at 2.)

3          While the court agrees that Mr. Burnett has established sufficient cause to excuse

4    his default, it concludes that he cannot meet his burden to show actual prejudice.  As Mr.

5    Burnett correctly notes, the question of whether there is a reasonable probability that this

6    court would have sentenced him to less than 10 years had his advisory guidelines range

7    been 63-78 months, rather than 70-87 months, "is an objective question that only the

8    [c]ourt can answer." (*See* Reply at 2.)  For the reasons stated below, the court concludes

9    that it would not have sentenced Mr. Burnett to less than 10 years even if his advisory

10   guidelines range had been 7-9 months lower.

11         Under the current federal sentencing scheme,[8] the sentencing guidelines are only

12   advisory, meaning that the court is not required to sentence a defendant within the

13   applicable guidelines range.  *United States v. Booker*, 543 U.S. 220, 264 (2005).  The

14   guidelines are "the starting point and the initial benchmark." *Gall v. United States*, 552

15   U.S. 38, 49 (2007); *Molina-Martinez v. United States*, 578 U.S. 189, 198-99 (2016)

16   (stating that the court should "remain cognizant of [the guidelines] throughout the

17   sentencing process" (quoting *Peugh v. United States*, 569 U.S. 530, 541 (2013))).  The

18   guidelines "are not the only consideration, however." *Gall*, 552 U.S. at 49.

19   "Accordingly, after giving both parties an opportunity to argue for whatever sentence

20   they deem appropriate, the district judge should then consider all of the § 3553(a) factors

21

22   _____
     [8] The same sentencing scheme was in effect when Mr. Burnett was sentenced.

1    to determine whether they support the sentence requested by a party." *Id.* at 49-50; *see*

2    *also United States v. Doe*, 705 F.3d 1134, 1153 (9th Cir. 2013).

3         In accordance with these principles, the court began its analysis of the appropriate

4    sentence by calculating Mr. Burnett's advisory guidelines range.  (*See* Sentencing Tr. at

5    26:14-20, 27:1-3.)  After it calculated Mr. Burnett's advisory guidelines range as 70-87

6    months, the court noted that Mr. Burnett's sentencing was "unusual" because the parties

7    "agreed[, pursuant to the plea agreement,] to make recommendations to the court greater

8    than that range"—Mr. Burnett recommended 120 months and the Government

9    recommended 180 months.  (*See id.* at 26:18-23, 3:7-9, 4:7-9, 13:19-24; *see also* Plea

10   Agreement ¶ 14.)  The court then evaluated the parties' recommendations in light of the

11   § 3553(a) factors.  (*See* Sentencing Tr. at 27:4-30:16.)  With respect to the nature and

12   circumstances of the offense, the court first took note of the significant benefits Mr.

13   Burnett received by pleading guilty to an offense which carried a lower mandatory

14   minimum (5 years) than the mandatory minimum he faced as originally charged (30

15   years).[9]  (*Id.* at 27:9-25 (noting that the Government could have charged an additional

16   possession of a firearm in-furtherance-of a drug trafficking crime, which would have also

17   carried a 25-year mandatory minimum that would run consecutively to any other

18   mandatory minimums.)  The court then noted that the offenses that Mr. Burnett pleaded

19

20        [9] Because Mr. Burnett had already been convicted of a § 924(c) count (possession of
     firearm in furtherance of drug trafficking) in 2002, if he had been convicted of the § 924(c) count
21   Government agreed to dismiss "it would be his second [§ 924(c)] conviction and, thus, the
     mandatory minimum prison sentence would have been 25 years, which would have been
     required to run consecutively to the drug offense charged in [Count 1] (a five-year mandatory
22   minimum sentence offense)."  (PSR at 14.)

ORDER - 12

1  guilty to are "extremely serious" because "Mr. Burnett has that prior conviction of not

2  only possessing firearms but using them in connection with crime." (*Id.* at 28:1-10.)

3  With respect to the history and characteristics of Mr. Burnett, the court found that Mr.

4  Burnett's mental health and chronic substance abuse issues, childhood challenges, and

5  lack of parental guidance were all relevant mitigating factors. (*Id.* at 28:11-18.)

6        However, it also found, taking into account Mr. Burnett's significant prior

7  criminal history, that Mr. Burnett is "someone who is most comfortable being on the edge

8  or over the edge of the law, and that at the time of his arrest in this matter, he was

9  unconcerned about the fact that he's living in the house with children, with weapons

10  readily accessible, with marijuana plants growing, apparently, in a separate building on

11  the property." (*Id.* at 29:4-13; *see also id.* at 14:16-15:15 (stating that the court was

12  "alarm[ed]" and "concern[ed]" about Mr. Burnett's failure to take responsibility for his

13  actions).) The court noted that a sufficient sentence was needed to reflect the extremely

14  serious offenses, to provide just punishment, and to promote respect for the law. (*Id.* at

15  29:14-21.) Given Mr. Burnett's prior criminal history, the court concluded that

16  "[p]romoting respect for the law . . . is important here, in that Mr. Burnett has

17  demonstrated that that's something he does not have at the present time." (*Id.* at

18  29:19-21; *see also id.* at 20:9-21:10 (discussing Mr. Burnett's past federal conviction for

19  carrying and possessing a firearm in furtherance of a drug trafficking crime and his

20  related, repeated supervised release violations); *id.* at 9:12-21:21 (same); *id.* at 28:19-21

21  (noting that "Mr. Burnett's age, 45, and the relatively short sentences that the state has

22  imposed repeatedly" also factored into the court's assessment of his conduct).)

1   Regarding the consideration of deterrence, the court noted that it would be optimistic to

2   believe Mr. Burnett would never break the law again given his background and stated

3   that "with age . . . comes experience, and you understand the consequences of what

4   you're doing." (*Id.* at 29:22-30:3.)  Finally, with respect to the protection of the public

5   from further crimes by this defendant, the court noted that it was "hopeful that with the

6   recommended sentences, Mr. Burnett will be in his mid 50s when he's discharged and

7   will have a period of supervised release, which, hopefully, will go better than the last

8   time." (*Id.* at 30:4-8.)

9        As is evident from the sentencing transcript and the statement of reasons, the court

10   ultimately concluded that the § 3553(a) factors supported Mr. Burnett's recommendation

11   of 120 months—"a sentence which is sufficient but not greater than necessary" to achieve

12   the goals of sentencing. (*See, e.g.*, Sentencing Tr. at 27:4-31:5.)  Because the court chose

13   to adopt Mr. Burnett's significantly above-guidelines recommendation in light of the

14   § 3553(a) factors, the court finds that there is no reasonable probability that it would have

15   sentenced Mr. Burnett to less than 120 months had his advisory guidelines range been 7-9

16   months shorter.[10]

17   _____

18   [10] While not discussed by the parties, the Ninth Circuit has held, on direct review, that the
     misapplication of an advisory guidelines range constitutes plain error that affects a defendant's
     substantial rights.  *See United States v. Dean*, 169 F. Supp. 3d 1097, 1109 (D. Or. 2016) (citing
19   *United States v. Vargem*, 747 F.3d 724, 729 (9th Cir. 2014)); *Molina-Martinez*, 578 U.S. at
     200-01 ("In most cases a defendant who has shown that the district court mistakenly deemed
20   applicable an incorrect, higher Guidelines range has demonstrated [plain error].").  The cases
     where lower courts have adopted the Ninth Circuit's direct review reasoning in the context of
21   procedural default generally involve:  (1) defendants whose original advisory guidelines ranges
     were calculated using the residual clause of the Career Offenders Guideline and whose new
     advisory guidelines ranges are almost half of their original ranges following the holding in
22   *United States v. Johnson*, 576 U.S. 591 (2015); and (2) judges who relied on the advisory

1    Because Mr. Burnett cannot overcome his procedural default, the court cannot

2    consider the merits of his § 2255 claim.[11]  Accordingly, the court DENIES Mr. Burnett's

3    § 2255 motion.

4    **D.    Certificate of Appealability**

5    As a final matter, the court notes that a petitioner seeking post-conviction relief

6    may appeal a district court's dismissal of a 28 U.S.C. § 2255 motion only after obtaining

7    a certificate of appealability.  28 U.S.C. § 2253(c); *see generally United States v. Asrar*,

8    116 F.3d 1268, 1269-70 (9th Cir. 1997).  A certificate of appealability may issue only

9    where a petition has made "a substantial showing of the denial of a constitutional right."

10   28 U.S.C. § 2253(c)(2).  A petitioner satisfies this standard "by demonstrating that jurists

11

---

12   guidelines range in sentencing the defendants to a within- or below-guidelines range term of
     imprisonment.  *See, e.g., Dean*, 169 F. Supp. 3d at 1105-14; *United States v. Savage*, 231 F.

13   Supp. 3d 542, 557-69 (C.D. Cal. 2017).  Those cases are distinguishable from the one at hand
     because this court "thought the sentence it chose was appropriate irrespective of the" advisory

14   guidelines range.  *Molina-Martinez*, 578 U.S. at 200-01 ("There may be instances when, despite
     application of an erroneous Guidelines range, a reasonable probability of prejudice does not

15   exist. . . . [A judge's] explanation could make it clear that the judge based the sentence he or she
     selected on factors independent of the Guidelines.").  As the record reflects, the court adopted

16   Mr. Burnett's recommendation of a 120-month sentence, which was approximately three years
     more than the highest end of the advisory guidelines range, based on its review of the § 3553(a)

17   factors.  Even if the guidelines range had been lowered by 7-9 months, the court would have still
     adopted the parties' recommended upward variance in light of the § 3553(a) factors.

18       [11] Because Mr. Burnett's claim is procedurally defaulted, the court determines that an
     evidentiary hearing is unnecessary.  Under § 2255, the court must hold an evidentiary hearing

19   unless "the motion and the files and records of the case conclusively show that the prisoner is
     entitled to no relief."  28 U.S.C. § 2255(b); *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir.

20   1989) ("No hearing is required if the allegations, viewed against the record, either fail to state a
     claim for relief or are so palpably incredible or patently frivolous as to warrant summary

21   dismissal.").  Here, neither Mr. Burnett nor the Government request an evidentiary hearing.  (*See
     generally* Mot.; Reply; Resp. at 11.)  The court concludes that the record in this matter (*see*

22   *generally* CR Dkt.) is a sufficient basis on which to determine that Mr. Burnett's claim is
     procedurally defaulted and that he is entitled to no relief.  *See Shah*, 878 F.2d at 1158.

1    of reason could disagree with the district court's resolution of his constitutional claims or

2    that jurists could conclude the issues presented are adequate to deserve encouragement to

3    proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard,

4    the court concludes that Mr. Burnett is not entitled to a certificate of appealability.

5                             **IV.    CONCLUSION**

6         For the foregoing reasons, the court DENIES Mr. Burnett's motion to vacate

7    judgment pursuant to 28 U.S.C. § 2255 (Dkt. # 1).  The court DISMISSES this matter

8    with prejudice and DECLINES to issue a certificate of appealability.

9         Dated this 27th day of June, 2022.

JAMES L. ROBART
United States District Judge